UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXINE DOBRO, et al., | Case No.:  16cv1197-AJB (BLM) |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES** |
| v. | |
| ALLSTATE INSURANCE COMPANY, et al., | **[ECF No. 12]** |
| Defendants. | |

Currently before the Court is Plaintiffs' July 26, 2016 "Motion to Compel Defendant's Responses to *Colonial Life*[1] Discovery" [ECF No. 12-1 ("Mot.")], Defendant's August 3, 2016

---

[1]     In Colonial Life & Accident Ins. Co. v. Superior Court, 31 Cal.3d 785, 788-92 (1982), the Supreme Court of California upheld the trial court's order allowing disclosure by a defendant insurer to plaintiff insured in a bad faith insurance action of the names and addresses of third-party insureds who filed similar claims against the insurer and whose claims were handled by the same adjuster, if those third-party insureds authorized the disclosure.

1

opposition to the motion [ECF No. 14 ("Oppo.")], and Plaintiffs' August 9, 2016 reply [ECF No. 15 ("Reply")].  Having considered the briefing submitted by the parties and having reviewed all of the supporting exhibits, the Court **DENIES** Plaintiffs' motion for the reasons set forth below.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2016, Plaintiffs filed a complaint in the San Diego Superior Court for breach of contract and breach of the implied covenant of good faith and fair dealing ("insurance bad faith").[2]  ECF No. 1-2.  Plaintiffs allege that Defendant Allstate Insurance Company issued a "Deluxe Plus Homeowner's Policy" ("the Policy") effective for the period of November 18, 2014 through November 18, 2015, insuring Plaintiffs' home.  Id. at 3.  Plaintiffs' roof was undergoing reconstruction, when on November 3, 2015, a rain storm caused water damage to the Plaintiffs' property.  Id.  Plaintiffs allege that the "roofer failed to cover the incomplete portions of the construction with a tarp or other means of protection," thereby causing the water damage to their property.  Id.  Plaintiffs further claim that the Policy provided coverage for damage to their property caused by the roofer's failure to protect the property from rain while replacing the roof.  See id. at 3-4.

On November 3, 2015, Plaintiffs tendered their claim for coverage under the Policy to Defendant, and Defendant assigned an insurance adjuster, Brett Allen, to handle the claim.  Id.

---

[2]  Plaintiffs assert in the instant motion to compel that they "believe they have a claim for Unfair Competition under *California Business and Profession Code section 17200, et seq.*, and will shortly be seeking leave to amend their Complaint to add that claim."  MTC at 6.  The Court notes that Plaintiffs have not yet filed a motion to amend, and the Court therefore disregards their "hypothetical" claim in adjudicating their motion to compel.  See Docket.

16cv1197-AJB (BLM)

1    at 3-4; see also Oppo., Declaration of Brett Allen ("Allen Decl.") at 2.  On November 21, 2015,

2    Defendant denied Plaintiffs' claim citing the exclusionary language of the Policy, namely the

3    "Planning, Construction or Maintenance" provision.[3]  Id.

4            On April 4, 2016, Plaintiffs served Form Interrogatories, Special Interrogatories, Requests

5    for Admission, and Requests for Production of Documents on Defendant.  MTC, Declaration of

6    Kenneth N. Greenfield ("Greenfield Decl.) at 2.  On May 18, 2016, Defendant removed the case

7    to this Court.  ECF No. 1.  On June 13, 2016, Defendant responded to Plaintiffs' discovery

8

9

10   _____

11   [3]  The provision excludes from coverage losses caused by:

12       22.   Planning, Construction or Maintenance, meaning faulty, inadequate or
            defective:
13       a)   planning, zoning, development, surveying, siting;
         b)   design, specifications, workmanship, repair, construction, renovation,
            remodeling, grading, compaction;
14       c)   materials used in repair, construction, renovation or remodeling; or
         d)   maintenance of property whether on or off the residence premises by any
15          person or organization.

16   ECF No. 1-2, Exh. 1 at 23.  Defendant stated the following in the relevant portion of its denial
     letter:
17
         We were unable to provide coverage for the claim due to the cause of the rain
18       intrusion to be from improper installation of the roofing system leading to rain
         intrusion into the dwelling. . . . Based on the inspection conducted . . . it was found
19       that the cause of the rain intrusion was based on the incomplete and faulty
         installation of the bitumen roofing system. . . . The policy specifically excludes the
20       faulty or inadequate installation or construction of the property whether on or off
         the residence premises by any person or organization.
21
     MTC, Exh. A.
22

3

1    requests.  MTC, Exh. B.  Plaintiffs bring this motion to compel Defendant's further responses to

2    Plaintiffs' Special Interrogatories 3-8.  See MTC.

3                                          **LEGAL STANDARDS**

4         "In diversity actions, where state law controls the substance of the lawsuit, procedural

5    law is provided by federal authority, including for discovery purposes."  Collins v. JC Penney Life

6    Ins. Co., 2003 WL 25945842, at *1 (S.D. Cal. May 6, 2003) (citing Aceves v. Allstate Ins. Co.,

7    68 F.3d 1160, 1167 (9th Cir. 1995) and Hanna v. Plumer, 380 U.S. 460, 472-74 (1965)).  The

8    scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

9              Parties may obtain discovery regarding any nonprivileged matter that is relevant
               to any party's claim or defense and proportional to the needs of the case,
10             considering the importance of the issues at stake in the action, the amount in
               controversy, the parties' relative access to relevant information, the parties'
11             resources, the importance of the discovery in resolving the issues, and whether
               the burden or expense of the proposed discovery outweighs its likely benefit.
12             Information within this scope of discovery need not be admissible in evidence to
               be discoverable.
13

14   Fed. R. Civ. P. 26(b)(1).

15        District courts have broad discretion to determine relevancy for discovery purposes.  See

16   Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion

17   to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must

18   limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

19   information by discovery in the action" or where the proposed discovery is "unreasonably

20   cumulative or duplicative," "obtain[able] from some other source that is more convenient, less

21   burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

22

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Id. at 34(b)(2)(B).  The responding party is responsible for all items in "the responding party's possession, custody, or control."  Id. at 34(a)(1).  Actual possession, custody or control is not required.  Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."  Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26.  Soto, 162 F.R.D. at 610.  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections."  DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## DISCUSSION

Plaintiffs ask the Court to compel Defendant's responses to Interrogatories 3-8.  MTC at 8-14, 24.  In the alternative, Plaintiffs seek to compel the production of the list of 10,082[4] third-

---

[4]  Defendant initially identified 8,900 claims in Southern California during the parties' meet and confer process, but subsequently realized that the original calculation did not include all relevant zip codes in Southern California.  Oppo., Declaration of Nathan S. Arrington ("Arrington Decl.")

5

1    party insureds' names and addresses, so long as "that list encompasses rain claims" that were

2    denied under the "faulty workmanship" or "Planning, Construction or Maintenance" exclusion in

3    the insurance policy. Id. at 24. Plaintiffs also ask the Court to approve their proposed letter to

4    be sent to the third-party insureds. Id.; id., Exh. D. Plaintiffs explain that if the Court approves

5    the letter, they will mail the letter to the identified third-party insureds, and if any of those

6    insureds return the signed letter authorizing Plaintiffs to access and review their claim files,

7    Plaintiffs will then obtain the consenting third-party insureds' claim files from Defendant and

8    review them. See id. at 21. In support, Plaintiffs assert that Colonial Life allows discovery of

9    names and contact information of other insureds who had similar claims with the insurer because

10    similar claims discovery is relevant to show a pattern and practice of the insurance company's

11    bad faith and to substantiate punitive damages claims, and the contact information is required

12    to obtain permission for the release of the consenting third-party insured's claim file. MTC at 4,

13    19-20. Plaintiffs also argue that Defendant's objections to the interrogatories on the grounds

14    that they are overbroad, burdensome, harassing and oppressive, vague and ambiguous, violate

15    non-party insureds' privacy rights, and exceed the number of permissible interrogatories, lack

16    merit. Id. at 20-24.

17        Defendant objects to Plaintiffs' motion to compel claiming that there is no evidence that

18    any of the 10,082 claims at issue are directly relevant to Plaintiffs' lawsuit, and asserts that

19    Colonial Life does not justify the discovery of private information concerning non-parties that is

20    not directly relevant to the underlying litigation. See Oppo. at 6, 8-9, 13-17. Defendant further

21    _____

22    at 3. After Defendant added the omitted zip codes to its search, the number of claims reached
10,082. Id.; see also id., Declaration of Jake Seaman (Seaman Decl.") at 3.

6

contends that Plaintiffs' interrogatories are unduly burdensome, overbroad, oppressive and harassing, that Plaintiffs' yet-to-be-amended complaint does not provide a basis for the motion to compel, and that Plaintiffs propounded more than the twenty-five interrogatories permissible under Fed. R. Civ. P. 33(a)(1).  Id. at 17-20.

Plaintiffs reply that the requested information is highly relevant to their insurance bad faith and punitive damages claims because Defendant committed bad faith by engaging in a pattern and practice of failing to investigate and pay covered claims, by incorrectly interpreting the "Planning, Construction or Maintenance" exclusion and/or the term "faulty workmanship" in the insurance policy, and by failing to follow California law as defined in Allstate Ins. Co. v. Smith, 929 F.2d 447 (9th Cir. 1991).  Reply at 2, 6.  Plaintiffs further argue that the requested discovery does not violate third-party insureds' privacy rights, does not place the burden on Defendant, and is not based on an unfiled amended complaint.  Id. at 5-7.  Plaintiffs also claim that because they served their interrogatives on Defendant while the parties were in state court where the 25-interrogatory limit did not apply, Defendant's objection based on the number of interrogatories is without merit.  Id. at 7.

**I.  Motion to Compel Responses to Interrogatories Nos. 4-8**

Interrogatories 4-8 seek the contact information for Defendant's customers who had claims similar to Plaintiffs' claim and whose claims were handled by Defendant's adjuster Brett Allen.[5]  MTC at 10-14, 24; Reply at 7.  Defendant objected to the Interrogatories on various

---

[5]  Specifically, Special Interrogatories Nos. 4-8 request names and addresses of all insureds whose claims were handled by Brett Allen and: "who made claims . . . for property losses caused by a third party's failure to protect property from rain" [No. 4]; "whose claims for property losses were denied . . . from April 4, 2015 to April 4, 2016" [No. 5]; "whose claims for property losses

7

1    grounds, but during the parties' meet and confer process, agreed to conduct the requested

2    search.  MTC, Exh. B at 4-12; Oppo., Declaration of Nathan Arrington ("Arrington Decl.") at 2.

3    As a result of the search, Defendant determined that Mr. Allen did not handle any other claims

4    that were similar to Plaintiffs' claim.  See Arrington Decl. at 2 (stating that "Brett Allen, Allstate's

5    adjuster, did not handle any other claim that was similar to the Dobros' claim."); Allen Decl. at

6    3 (stating that "[o]ther than Ms. Dobro's claim, [Mr. Allen] ha[s] not handled any claim that

7    involved (1) a rain claim, (2) where a contractor had started but not yet completed roof repairs,

8    and (3) where the claim was denied based on contractor negligence.").  Plaintiffs do not address

9    this issue—they neither assert that Defendant's facts are inaccurate nor provide any evidence

10   to refute Defendant's assertion that Mr. Allen did not handle any claims similar to their claim.

11   See Reply.  Plaintiffs also do not explain what information or further response they want the

12   Court to compel.  See id.  Because Defendant's unrefuted evidence establishes that Mr. Allen

13   did not handle any other claims similar to Plaintiff's claim, the Court **DENIES AS MOOT**

14   Plaintiffs' motion to compel with respect to Special Interrogatories Nos. 4-8.

15   **II.    Motion to Compel Responses to Interrogatory No. 3.**

16          Plaintiff's Special Interrogatory No. 3 seeks the following:

17                 Please, list the CONTACT INFORMATION of all insureds who made claims
              to YOU for property losses caused by a third party's failure to protect property

18   _____

19   caused by a third party's failure to protect property from rain were denied . . . from April 4, 2015
     to April 4, 2016" [No. 6]; "who made claims . . . for property losses from April 4, 2015 to April 4,

20   2016, whose claims were denied due to the application of the PLANNING, CONSTRUCTION OR
     MAINTENANCE EXCLUSION" [No. 7]; "who made claims . . . for property losses caused by a

21   third party's failure to protect property from rain from April 4, 2015 to April 4, 2016, whose
     claims were denied due to the application of the PLANNING, CONSTRUCTION OR MAINTENANCE

22   EXCLUSION" [No. 8].  MTC, Exh. B at 6-11.

from rain, whose claims were denied due to the application of the PLANNING, CONSTRUCTION OR MAINTENANCE EXCLUSION, from 1991 to the present.

[As used herein, "**CONTACT INFORMATION**" means *name and address*.]

. . .

[As used herein, "**PLANNING, CONSTRUCTION OR MAINTENANCE EXCLUSION**" shall refer to any of YOUR property insurance policy provisions containing the following language:

"Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
a)  planning, zoning, development, surveying, siting;
b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c)  materials used in repair, construction, renovation or remodeling; or
d)  maintenance of property whether on or off the residence premises by any person or organization."

MTC, Exh. B at 5 (emphasis added).  Defendant objected that the interrogatory was vague and ambiguous as to the term "property losses," and sought information related to non-party insureds protected from disclosure by Cal. Ins. Code § 791.13, Cal. Code of Civ. P. § 1985.3 and by the right to privacy, and asserted that Plaintiff had not complied with the prerequisite notice provisions of § 1985.3.  Id. at 5-6.  Defendant also stated that the interrogatory was overbroad, unduly burdensome, oppressive and harassing, sought irrelevant information, was based on insurance policies, statutes and regulations that were no longer in effect, and that the requested discovery was not proportional to the needs of the case.  Id.  Finally, Defendant objected claiming that the number of Plaintiffs' interrogatories exceeded the number of permissible interrogatories under Fed. R. Civ. P. 33(a)(1).  Id.

During the parties' meet and confer process, Plaintiffs agreed to limit the scope of the Special Interrogatory No. 3 as follows:

9

(1) rain claims,
(2) that were reported after January 1, 2010,
(3) for properties located in Los Angeles County, Riverside County, San Bernardino County, Orange County, Imperial County, and San Diego County ("Southern California Counties"),
(4) where the location of the rain leak occurred in the roof as opposed to windows, doors, basements, or other locations,
(5) where a contractor had started roof repairs but had not yet completed the repairs at the time that the rain claim occurred, and
(6) where the claim was denied based the policy exclusion for the negligence of a contractor.

Arrington Decl. at 2. Defendant searched its records for rain claims that were reported after January 1, 2010 for Southern California Counties, and uncovered 10,082 claims. Seaman Decl. at 2-3. Plaintiffs now seek an order from the Court compelling the production of the names and addresses of the 10,082 non-party insureds, whose claims Defendant identified for Southern California Counties, alleging that Colonial Life permits such discovery. See MTC; Reply.

### a. **Colonial Life**

In Colonial Life, Plaintiff, the administratrix of the estate of the deceased insured sued Colonial Life & Accident Ins. Co. ("Colonial Life") and its claims adjusters, Equifax Inc. and J. T. Sharkey, for violation of Cal. Ins. Code § 790.03(h), breach of contract, and breach of the duty of fair dealing and good faith, and sought general and punitive damages based on defendants' conduct in settling a claim made by the deceased insured under an accident policy issued by Colonial Life. Colonial Life, 31 Cal.3d at 788. Plaintiff served Equifax with a request to inspect and copy all documents pertaining to cases handled by Sharkey while employed by Equifax, and Equifax objected based on overbreadth and relevancy grounds, and the Insurance Information and Privacy Protection Act (Ins. Code, § 791.01, *et seq.*). Id. Plaintiff moved to compel discovery, and the trial court "ordered Equifax to produce the names and addresses of all

16cv1197-AJB (BLM)

1    persons whose claims for benefits under Colonial's policies were assigned [to] Sharkey for

2    settlement–about 35 in all–and approved a letter to be sent by plaintiff's counsel to these

3    individuals requesting that they consent to the release of their records by Equifax." Id. at 789.

4    Colonial Life sought a writ of mandate barring such discovery. Id. 789-90.

5         The California Supreme Court held that "[d]iscovery aimed at determining the frequency

6    of alleged unfair settlement practices [wa]s [] likely to produce evidence directly relevant to the

7    action," and that "[o]ther instances of alleged unfair settlement practices m[ight] also be highly

8    relevant to plaintiff's claim for punitive damages." Id. at 791. The court reasoned that the

9    plaintiff could establish her claim by showing either that the alleged harmful acts were knowingly

10   committed or were engaged in frequently enough to indicate a general business practice. Id.

11   The court also concluded that the letter approved by the trial court to obtain third-party insureds'

12   consent to the release of their private information satisfied the privacy provisions of Cal. Ins.

13   Code § 791.13. Id. at 790 n.10.

14        Defendant argues that because Moradi-Shalal v. Fireman's Fund Ins. Cos, 46 Cal. 3d 287

15   (1988) eliminated a private right of action for violation of Cal. Ins. Code § 790.03, Colonial Life

16   does not justify discovery in this case. See Oppo. at 14-15. Plaintiffs disagree, arguing that

17   while an insured no longer has a private right of action for a violations of Cal. Ins. Code § 790.03,

18   the violations of the section can still be used as evidence of an insurer's unreasonable conduct

19   in an insurance bad faith action. Reply at 3-4 (citing Rattan v. United Servs. Auto Ass'n, 101

20   Cal. Rptr. 2d 6, 12 (Ct. App. 2000); Jordan v. Allstate Ins. Co., 56 Cal. Rptr. 3d 312, 323 (Ct.

21   App. 2007)). Plaintiffs also assert that the California Supreme Court's reasoning as to the

22

1    relevancy of <u>Colonial Life</u> discovery in the context of a § 790.03 violation does not change when

2    it is applied to an insurance bad faith lawsuit.  Reply at 4.

3          "*Colonial Life* has been followed . . . by California state courts considering not only claims

4    under § 790.03 of the Insurance Code but also common law 'bad faith' claims," and thus "the

5    reasoning in <u>Colonial Life</u> applies whether bad faith is alleged under a statute or under a common

6    law theory."  <u>J & M Assoc., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 2008 WL 638137,

7    at *5 (S.D. Cal. Mar. 4, 2008) (citing <u>Moore v. American United Life Ins. Co.</u>, 150 Cal. App. 3d

8    610 (1984)); <u>see also</u> <u>Pioneer Elecs. (USA), Inc. v. Superior Court</u>, 150 P.3d 198, 200, 203 (Cal.

9    2007).  In this case, Plaintiffs allege bad faith by Defendant for wrongful denial of a homeowners'

10   insurance water loss.  <u>See</u> ECF No. 1-2.  As such, the Court will examine Plaintiffs' discovery

11   request in light of the principles and procedures articulated in <u>Colonial Life</u>.

12                    b.  **Relevance**

13         Plaintiffs assert that they are seeking evidence to establish a pattern and practice of bad

14   faith denials of coverage and misinterpretation of the "Planning, Construction or Maintenance"

15   exclusion or the term "faulty workmanship" in Defendant's insurance policies.  Reply at 4.

16   Plaintiffs argue that the requested discovery is relevant to show that Defendant consistently

17   misinterpreted its insurance policies, failed to pay covered claims, and did not follow California

18   law regarding the term "faulty workmanship,"[6] and that the discovery is thus relevant to

19   _____

20   [6]   Plaintiffs explain that in <u>Allstate v. Smith</u>, 929 F.2d at 450-51, the Ninth Circuit held that
     under California law, the ambiguous term "faulty workmanship" used as an exclusion clause in
21   an all risk policy meant "flawed quality of product worked upon," not faulty method of
     construction, and that therefore a roofing contractor's failure to cover the exposed premises did
22   not exclude coverage for the resulting rain damage.  Plaintiffs assert that <u>Smith</u> interpreted the
     same exclusionary language at issue in this case and involved facts similar to the facts in this

                                               12

Plaintiffs' insurance bad faith claim and the issue of punitive damages.  MTC at 19-20; Reply at 2, 4, 6.

Defendant argues that Interrogatory 3, as drafted, is extremely overbroad and seeks irrelevant documents.  Oppo. at 8.  The Court agrees.  Defendant acknowledges that Plaintiffs agreed to limit the scope of the interrogatory to insurance claims containing six factors.  Id.; see Arrington Decl. at 2; see also supra p. 10.  Defendant explains, however, that it is unable to conduct a system-wide search that includes factors 4, 5 and 6.  Oppo. at 9; Seaman Decl. at 4.  As part of the meet and confer process, Defendant searched its computer system for files that satisfied factors 1, 2 and 3, and this search resulted in 10,082 claims.  Seaman Decl. at 2-3.  Defendant argues that "the vast majority if not all" of the 10,082 claims are not directly relevant to the facts of this case because they include claims that involved a leak at a location other than a roof, were not limited to situations in which a contractor had started but not completed roof repairs, and were not limited to claims that were denied based on the policy exclusion for the negligence of the contractor.  Oppo. at 9.  Defendant also emphasizes that it searched for any responsive files handled by the adjuster in this case and determined that there are no such files.  See id. at 8; Arrington Decl. at 2; Allen Decl. at 3.

The Court agrees with Plaintiffs that pursuant to Colonial Life, discovery regarding other claims, when properly limited to the facts, insurance policy, and claims at issue in this case, is relevant to the Plaintiffs' claims in this case.  See J & M Assoc., Inc., 2008 WL 638137, at *5

_____

case.  MTC at 8.  Plaintiffs therefore argue that the requested discovery is relevant to show *how* Defendant interpreted the "Planning, Construction or Maintenance" exclusion and the term "faulty workmanship" in other claims since the Smith decision.  Id. at 19-20.

("pursuant to *Colonial Life*, [] discovery regarding other claims handled by [defendant] is relevant to [Plaintiff's] claims in this action, insofar as the requests seek information pertaining to the same type of policy at issue in this case").  On the other hand, the Court agrees with Defendant that the identified 10,082 claims do not constitute discovery that is properly limited to the facts, insurance policy, and claims at issue in this case as they likely include a significant number of claims that are irrelevant to the facts underlying this dispute.  The Court therefore finds that the scope of the interrogatory as originally drafted, and as limited by factors 1, 2, and 3 only, is overbroad and encompasses a significant amount of irrelevant information and is not proportional to the needs of this case.  The Court finds the scope of the interrogatory when limited by all six factors may appropriately seek relevant information and may be proportional to the needs of the case.

       c. **Burden**

Defendant argues that it would be unduly burdensome, oppressive and harassing to respond to Special Interrogatory 3 as limited by all six elements of Plaintiffs' proposal because it is not able to electronically search for all six elements.  Oppo. at 8, 17-18.  In support, Defendant provided a declaration by Jake Seaman, a staff claims manager at Allstate Insurance Company, who states that he is familiar with the "search capabilities and limitations of Allstate's electronic records," and that his responsibilities include performing searches of such electronic records for property claims reported by Defendant's customers.  Seaman Decl. at 1-2.  Mr. Seaman declares that he searched Defendant's electronic records for claims reported after January 1, 2010, caused by rain and related to properties located in Los Angeles, Riverside, San

1    Bernardino, Orange, Imperial, and San Diego Counties, and identified 10,082 claims.  Id. at 2-

2    3.  Mr. Seaman further declares that

3

4           Allstate's electronic records do not have a system-wide search capability to identify
            claims where (1) a contractor had started but not yet completed roof repairs at
            the time that the rain claim occurred, (2) the claim was denied based on contractor
5           negligence, and (3) the location of the rain claim leak occurred in the roof as
            opposed to windows, doors, basements, or other locations.

6

7    Id. at 4.  Mr. Seaman explains that as a result, "Allstate would need to perform a claim by claim

8    review" to identify specific claims that involved a fact pattern described in categories (1)-(3),

9    and asserts that such review would take at least three minutes per claim.  Id. at 4-5.

10          Plaintiffs do not submit any information contradicting Defendant's evidence.  See Reply.

11   Rather, Plaintiffs assert that Defendant will not incur a burden because Plaintiffs will conduct

12   the manual search, not Defendant.  See MTC at 21; Reply at 6.  Plaintiffs explain that they will

13   send the consent letter to the 10,082 third-party insureds identified by Defendant via factors 1-

14   3, and if a third-party insured consents, they will review the file to determine relevance.  See id.

15   at 5.  Plaintiffs argue that Mead Reinsurance Co. authorizes this procedure because it "relieves

16   the oppression inherent in forcing the insurance company to do all this work by instead placing

17   the burden to review the claim files on the asking party."  Id. at 6 (citing Mead Reinsurance Co.,

18   188 Cal. App. 3d at 322-23).

19          In Mead, the California Court of Appeal found that an insured's request for production of

20   an insurer's claims files relating to every claim similar to the claim at issue made during a six-

21   and-a-half-year period was oppressive, where uncontroverted declarations established that

22   responding to the discovery request would require manual review of over 13,000 claims files

15

1 and would take at least 1,083 hours. Id. at 317-20. The court reasoned that complying with

2 the request would "impose the oppressive burden upon defendants of formulating a case against

3 themselves, a requirement which goes far beyond the bounds of our adversary system of

4 justice." Id. at 322. The court then modified the trial court's order compelling the insurer to

5 disclose to the insured "the names and addresses of all claimants for whom claim files, . . . were

6 opened in any of . . . California offices after January 1, 1979." Id. Notably, in reaching this

7 decision, the court stated:

8         We observe with interest, if not incredulity, that [the defendant insurer], . . . *raised
          no objection to the [trial court's] order on grounds that there was no showing of*
9         *relevancy* by [insured plaintiff] in the trial court. Conceding to the trial court's
          order the presumptions of validity to which it is entitled where the record is silent,
10        *we can only assume that the issue of relevancy of whatever may be in these*
          *hundreds or perhaps thousands of claim files to be produced, if such issue was*
11        *raised at all in the trial court, was resolved in favor* of [the insured plaintiff].

12 Id. at 319 (emphasis added).

13        Unlike the insurer in Mead who did not object on relevancy grounds, Defendant in this

14 case asserts that the vast majority of the 10,082 claims it identified for Southern California are

15 not directly relevant. Oppo. at 9. As set forth above, the Court agrees with Defendant and finds

16 that the 10,082 files identified by factors 1-3 contain significant amounts of irrelevant

17 information. As such, the Court finds Plaintiffs' reliance on Mead unavailing. The Court is not

18 willing to allow Plaintiffs to contact more than 10,000 third-party insureds when the vast majority

19 of the claims made by those insureds are irrelevant to this case. The Court also is not willing to

20 allow Plaintiffs to review what could amount to thousands of Defendant's insurance claim files,

21 even if the insureds authorize the review, because the vast majority of the files are irrelevant to

22 this case and the scope of the request is not proportional to Plaintiffs' case. See Fed. R. Civ. P.

1   26(b)(1) (a party may "obtain discovery regarding any nonprivileged matter that is relevant to

2   any party's claim or defense and proportional to the needs of the case").

3          Although Plaintiffs question Defendant's purported inability to search its databases for

4   relevant claims, the unrefuted evidence establishes that Defendant does not have the capability

5   to search for claim files containing the six factors identified by Plaintiff to limit the discovery

6   request to the facts of this case.  See Seaman Decl.; Collins, 2003 WL 25945842, at *6 (relying

7   on defendant insurance company's declaration asserting that the company did not have

8   automated means of identifying the claims files responsive to plaintiff's discovery requests); see

9   also Farmers Ins. Exchange v. Superior Court of the State of Cal. for the County of L.A., 1999

10  WL 33745423, at 15-16 n.4 (1999) (finding that the trial court abused its discretion when it

11  erroneously disregarded insurance company's declarations establishing undue burden, because

12  "the trial court was required to assume [that the] declarations fairly state[d] the facts in terms

13  of what would have to be done by [the party asserting burden] to comply with the court's order"

14  where the insurance company's declarations asserted that it would be required to manually

15  review thousands of claim files to compile interrogatory responses; also observing that "insurers

16  create their computer systems to retrieve information that will be helpful to them in the conduct

17  of their business, i.e., selling insurance and handling claims," and that "[t]here is no business

18  reason why [the insurance company] should have built a computer system capable of

19  accommodating the needs of some unknown plaintiff who will assert an unknown claim at some

20  unknown time in the future.").  As a result, the Court finds that Plaintiffs' request as limited by

21  the identified six factors is unduly burdensome and not proportional to the needs of this case.

22

1              d. **Third Party Privacy Rights**

2        Defendant also argues that the discovery should not be permitted because non-party

3   insureds have a fundamental and compelling privacy interest in their contact information, which

4   is not discoverable absent proof of direct relevancy, careful balancing of the need for the

5   discovery against the right of privacy, and narrow tailoring of the scope of the produced

6   information.  Oppo. at 9-13.  Plaintiffs assert that Cal. Ins. Code § 791.13 and Colonial Life have

7   established a procedure that protects third-party insureds' privacy rights and they seek

8   permission to use this procedure to obtain the requested discovery.  MTC at 22.

9        The Insurance Information and Privacy Protection Act (Cal. Ins. Code § 791.01, *et seq.*)

10  creates a right of privacy with respect to claims files maintained by insurance companies.  Cal.

11  Ins. Code § 791.13 provides in relevant part the following:

12       An insurance institution, agent, or insurance-support organization shall not
         disclose any personal or privileged information about an individual collected or
13       received in connection with an insurance transaction unless the disclosure is:

14       (a) With the written authorization of the individual, and meets either of the
         conditions specified in paragraph (1) or (2):
15       (1) If the authorization is submitted by another insurance institution, agent, or
         insurance-support organization, the authorization meets the requirement of
16       Section 791.06.

17       (2) If the authorization is submitted by a person other than an insurance
             institution, agent, or insurance-support organization, the authorization is:
18           (A) Dated.
             (B) Signed by the individual.
19           (C) Obtained one year or less prior to the date a disclosure is sought
             pursuant to this section.
20

21  Id.  Accordingly, the discovery of insurance claims files is conditioned upon obtaining the written

22  consent of the third-party insureds in response to a court-approved request form, provided that

1   such third-party insureds sign and date a written authorization form within one year prior to the

2   date of the disclosure.  Id.; see also Colonial Life, 31 Cal. 3d at 792-94 n.10; Mead Reinsurance

3   Co. v. Superior Court, 188 Cal. App. 3d 313, 321-22 (Cal. Ct. App. 1986).

4         The Court acknowledges that the procedure suggested by Plaintiffs may be appropriate

5   in some cases.  However, given the extremely large number of identified claims (10,082) and

6   the fact that many of them will be irrelevant to the facts of this case, the Court finds that the

7   requested procedure would inappropriately impact the privacy rights of numerous third-party

8   insureds and is not proportional to the needs of this case, and the Court declines to authorize

9   its use for the 10,082 claims.

10        e.   **Conclusion**

11        Defendant has established that Brett Allen, the claims adjuster who denied Plaintiffs'

12   claim, did not handle any other similar, relevant claims.  See Allen Decl. at 3; Arrington Decl. at

13   2.  Defendant also has established that it is unable to conduct the electronic search requested

14   by Plaintiffs in limiting Special Interrogatory 3 to six factors and that it would be extremely

15   expensive and time consuming to conduct the manual search that would be required.  See

16   Seaman Decl.; see also Arrington Decl. at 2.  The search that Defendant was able to conduct

17   resulted in more than 10,000 claims, which undoubtedly include a significant number of

18   irrelevant claims.  Plaintiffs' assertion that some of the 10,082 files *may* contain relevant claims

19   is insufficient to justify the extremely time- and labor-intensive search of Defendant's files.  See

20   Fed. R. Civ. P. 26(b)(1); J & M Associates, Inc., 2008 WL 638137, at *6 (finding that the burden

21   and expense of the requested discovery outweighed its likely benefit, "notwithstanding [the

22   court's] finding that the requests sought relevant information," where defendant insurance

19

16cv1197-AJB (BLM)

company provided an affidavit "demonstrate[ing] that [it] would incur enormous burden" if it were required to respond to plaintiff's discovery requests); <u>Collins</u>, 2003 WL 25945842, at \*7 (finding that "the overly burdensome response requirements, the implications for third parties' privacy rights, and the associated costs to [the insurance company] outweigh [plaintiff's] showing of relevance and need for the [requested] discovery" in an insurance bad faith action).

The Court notes however that Plaintiffs are entitled to conduct discovery to investigate the statements contained in Mr. Seaman's declaration and/or to determine the capabilities of Defendant's computer system.  For example, Plaintiffs may depose Mr. Seaman or a corporate employee who is most knowledgeable about how Defendant maintains its electronic records and the specific search capabilities of Defendant's electronic records, in order to identify additional search terms and/or queries that may enable Plaintiffs to limit their discovery request and minimize the burden on Defendant associated with searching its records for relevant claims.  <u>See J & M Associates, Inc.</u>, 2008 WL 638137, at \*6 (denying plaintiff's motion to compel without prejudice and noting that the plaintiff could depose defendant's personnel "regarding the organization and location of the other claim files."); <u>see also</u> Advisory Committee's Notes on 2015 Amendments to Fed. R. Civ. P. 26 (stating that "[f]raming intelligent requests for electronically stored information . . . may require detailed information about another party's information systems and other information resources.").  Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to compel further responses to Special Interrogatory No. 3.

///

///

## **SUMMARY AND CONCLUSION**

For the foregoing reasons, the Court:

(1) **DENIES AS MOOT** Plaintiffs' motion to compel further responses to Special Interrogatories Nos. 4-8; and

(2) **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to compel further responses to Special Interrogatory No. 3.

**IT IS SO ORDERED.**


Dated:  9/2/2016

Hon. Barbara L. Major
United States Magistrate Judge

21

16cv1197-AJB (BLM)